## KENDALLVILLE LUMBER COMPANY *v.* ADAMS ET AL.

[No. 14,095. Filed June 4, 1931. Rehearing denied October 2, 1931. Appellant's petition for leave to file petition for transfer to Supreme Court denied December 9, 1931.]

142

Redmond & Emerick, for appellant.

Fred L. Bodenhafer and Vermont Finley, for appellees.

CURTIS, J.—On June 12, 1926, Homer B. Adams and his wife, Margaret M. Adams (appellees herein), entered into a written contract with appellee Flesher, by which the latter agreed to construct a house, garage and driveway according to certain plans and specifications on certain described real estate owned by Adams and wife.

The evidence shows that the Kendallville Lumber Company (appellant herein) furnished to Flesher (hereinafter referred to as "the contractor") building material and lumber for the construction of a house, garage and driveway, which was to be constructed for the Adamses, such materials being furnished from June 17, 1926, to November 1, 1926, and was of the reason-

able value of $2,632.66; that on November 1, 1926, the contractor ceased and abandoned work on the buildings in question and before such buildings were completed; that Homer B. Adams, one of the owners, completed the construction of the house, garage and driveway; that appellant furnished materials from November 3 to December 10, 1926, for the completion of the work in the amount of $181.30. The Kendallville Lumber Company, on January 10, 1927, filed its notice of intention to hold a mechanic's lien for the amount of $2,832.16, which amount included the $2,632.66 for materials furnished the contractor between June 17, 1926, and November 1, 1926, and the $181.30 for materials furnished Adams for the completion of the buildings.

This action was based upon appellant's complaint in one paragraph to foreclose the mechanic's lien above mentioned. Appellees Adams and Adams filed answer in three paragraphs, the first in general denial, the second of payment, and the third averred, in substance: That the materials purchased from appellant by the contractor and used in the improvements under consideration were sold to such contractor and charged to him upon appellant's books; that, on or about November 1, 1926, and at a time when the dwelling house was finished or nearly so, but before the garage had been completed, the contractor became insolvent and abandoned the construction of the house, garage and improvements mentioned in the complaint and thereafter neither did any work on the same nor furnished any materials therefor; that the contractor notified appellee Homer B. Adams of his (the contractor's) abandonment of the contract and that Adams, more than 60 days prior to January 10, 1927, notified appellant of the contractor's abandonment of the contract and, at the same time, notified appellant not to sell to such contractor any further materials to be used in the construction of the

house, garage and improvements in question, but to charge any further materials that might be ordered for the completion of such work to appellee Homer B. Adams and that he (Adams) would pay for the same, all of which was agreed to by appellant; that, after such agreement between Adams and appellant, no further materials were furnished the contractor for the buildings in question; that, after such agreement, all materials furnished by appellant to be used in said buildings were charged to Adams and that none of the materials sold and furnished to the contractor by appellant for use in the construction of the house, garage and improvements described in the complaint were sold or furnished within 60 days immediately preceding January 10. To this answer, appellant filed reply in two paragraphs, the first a general denial, and the second stating that appellant would have filed its notice of intention to hold a mechanic's lien on or before December 20, 1926, on the real estate in question, had it not been for appellee Adams admitting to appellant's attorneys his liability of the entire amount and representing to them that he would pay the same as soon as he made a settlement with Flesher.

Trial was had by the court upon the issues thus formed. The court found that there was due appellant from Adams and Adams the sum of $181.30, and that there was due appellant from Flesher the sum of $2,-632.66. The court rendered judgment against Adams and Adams for $181.30, plus interest and attorney's fees, and declared the same to be a lien upon the premises described in the complaint and ordered the lien foreclosed. The court further rendered personal judgment against the contractor for $2,632.66, with interest, but refused to declare this last-named amount to be a lien on the real estate. From this judgment, appellant appealed and assigned as error the court's overruling of

its motion for a new trial, under which it claims that the decision is contrary to law; that it is not supported by sufficient evidence; and that the amount of recovery is erroneous, being too small.

The two questions presented by the appeal in this case are: (1) Is there evidence sufficient to support a finding that the materials were furnished under two separate and independent contracts, one for the larger amount with Guy C. Flesher, the contractor, and one for the smaller amount with Homer B. Adams, the owner, and one of the appellees herein; and (2) if there were two separate contracts, can the latter be tacked to the former to make the lien filed January 10, 1927, sufficient to cover the earlier claim?

Appellant contends that, since the lien was for materials furnished by appellant for "the same identical job and for the same identical improvements located on one lienable unit of land," the time for filing the statutory notice of intention to hold a lien dates "not from the time the last item was furnished while the contractor was in charge, but from the time the last item was furnished after the owner requested the materialman to furnish the material necessary to complete the job." There might be merit in this contention had there been but one contract involved in the transactions. But the court, to arrive at its judgment, must necessarily have found that there were two contracts involved, one between the contractor and appellant and the other between the appellant and the appellee Adams. Whether all the items of charges for materials were furnished under a single contract or whether they were furnished under two separate and independent contracts is a question of fact for the court in a case tried without a jury. *Nye & Schneider Co.* v. *Fred Berger* (1897), 52 Nebr. 758, 73 N. W. 274. If

there is evidence to support the decision of the court on this point, its finding in relation thereto will not be disturbed.

Appellee Adams testified, in part, as follows: That he went to the office of the Kendallville Lumber Company on November 3 or 5 and talked to Sabrosky, manager of appellant company, and "I told him Flesher was going on the road for Whiteford Brothers. He was not going to finish my house and garage and walks and that I would have to finish them myself. I told him further that he should send anything that I ordered or the men ordered to complete the house and I would give him a check for the full payment. Sabrosky said he would." He further testified that he told Sabrosky: "I will have to finish Flesher's contract on my house and garage and from now on charge everything that is ordered to me, or the men that work on the house, charge everything to me. When it is completed, I will give you a check for it. . . . Sabrosky said all right." Guy C. Flesher, the contractor, testified that, in a conversation which occurred the first part of November, 1926, with Sabrosky, he told Sabrosky that he (Flesher) was in a pocket financially and that he didn't know how he was going to get out but thought he would go to work for Whiteford Brothers and that Sabrosky told him "not to worry, he would take care of me." This evidence clearly establishes the fact that appellant had notice on November 3 or 5 that the contractor had abandoned his contract with Adams and Adams and that Homer Adams was to finish the construction work on the house, garage and driveway in question. It clearly shows that appellant was to furnish to Adams materials for the completion of the work and that such materials were to be charged to Adams and for which he expressly agreed to pay. There is no evidence to the effect that Adams had contracted with

appellant for the materials furnished the contractor, nor does appellant contend that Adams was personally liable for such materials. This evidence clearly establishes, we think, that the materials were furnished under two separate contracts with different individuals, and we cannot say the court erred in its judgment unless the materials furnished under the contract with Adams can be *tacked onto* the contract under which the materials were furnished the contractor in such a way as to defeat the 60-day statutory limitation.

Appellant contends that "the claim of appellant, although it may have arisen under two separate contracts, namely, one with the contractor and one with the owner, required only one notice of intention to make it a lienable claim as to the reasonable value of materials sold both the contractor and owner." Appellant argues that, since the materials were furnished under one continuous employment and were purchased for the purpose of making the same identical improvements, the later contract may be *tacked onto* the former for the purpose of defeating the 60-day statutory limitation. *Parsons* v. *Keeney* (1923), 98 Conn. 745, 120 Atl. 505, relied upon by appellant, is not in point. While, as appellant contends, the Connecticut statute is very similar to our own, the facts in that case are quite different from the facts of the instant case. Appellant cites a number of Indiana authorities to the effect that it had a right, if necessary, to "tack" together the items furnished under the contract with the contractor and the items furnished the owner, for the purpose of extending the time for the filing of its intention to hold a mechanic's lien, but an examination of those cases discloses that only one contract was involved in each case and they are, therefore, not applicable to the facts of the instant case. As was said in *Trueblood* v. *Shellhouse* (1898), 19 Ind. App. 91, 49 N. E. 47, cited by

appellants, speaking of the case of *Smith* v. *Newbaur* (1895), 144 Ind. 95, 42 N. E. 40, 1094, 33 L. R. A. 685, which is also cited by appellants: "We do not understand the opinion in *Smith* v. *Newbaur, supra,* to apply to the sale of materials to different contractors, under separate and distinct contracts." Neither do we understand that any of the Indiana cases cited by appellant apply to the sale of materials to different contractors under separate and distinct contracts.

*Byrne* v. *Forbes* (1913), 90 Kans. 557, 135 Pac. 598, was a case where the contractor for the erection of a building abandoned his contract before the completion of the building, and the owner finished the building in his own way upon his own account and credit after the contractor had abandoned his contract with the owner. The court held that the owner did not adopt the contract of the contractor or undertake to fulfill or complete it whereby the owner in effect became substituted for the contractor. The court in that case held that the lien of the plaintiff, who was a subcontractor for materials furnished, is lost unless he files a statement therefor within 60 days from the last furnishing of materials to such contractor. While it is true that a subcontractor was involved in the Kansas case, yet the statute under which that action was brought placed the subcontractor upon the same footing as our statute (Acts 1909 p. 295, §1, §9833 Burns 1926) places materialmen and contractors. The Kansas statute, §§60-1403 of the Revised Statutes of Kansas 1923, which is Laws 1909, ch. 182, §651, makes it necessary to file such claim "within sixty days after the date upon which material was last furnished or labor last performed under such sub-contract."

In the case of *Booth* v. *VonBeren* (1909), 82 Conn. 298, 73 Atl. 775, a lumber dealer supplied a building contractor with lumber for the construction of a house, but failed to file his certificate of lien therefor until

more than 60 days had elapsed after he had ceased to furnish it. Thereafter the original contractor was discharged and the lumber dealer voluntarily furnished his successor with material to complete the building and then filed a certificate of lien for the entire amount. The court, in that case, held that the materialman, having lost, by delay, his right to file a lien for the material furnished to the original contractor, could not thereafter *tack* together the separate and independent transactions with the two contractors so as to revive the right thus lost, nor could he by such action extend the time for filing a certificate for the lumber first supplied. See, also, *Farnham* v. *Davis* (1887), 79 Me. 282, 9 Atl. 725.

In the instant case, the contractor made arrangements with appellant to furnish material for such construction work at such times as the contractor might need the same. Appellant, in its brief, admits that *no specified quantity or price was fixed between the contractor and the appellant, but an understanding was had that appellant would furnish such material from time to time as called for by the contractor*. There was no contract between appellant and the contractor wherein appellant was to furnish *all* the materials for the construction of the work in question. There was no contract between appellant and the contractor that could have been assumed by Adams. Adams in no manner was substituted for the contractor, nor was he in any way acting as agent of the contractor in the finishing of the buildings. What Adams did after the contractor abandoned the contract for the building of the house, garage and driveway, was to complete such work himself upon his own responsibility and on his own personal liability to pay for what he purchased. For all purposes of claiming a lien, the subsequent contract with Adams was as disconnected from the contract with the contractor as if it had been for a different building. Under such cir-

cumstances, the latter contract was not a supplement to the former, but a new and independent contract, and a lien under the latter would not protect work done under the former. Appellant, by delaying to file its intention to hold a mechanic's lien within 60 days from the time it ceased to furnish materials to the contractor, lost its right to a lien for such materials, and the two separate and independent transactions of furnishing materials to the contractor and to Adams cannot be tacked together so as to revive that lost right given by statute, or so as to extend the time for filing its intention to hold a lien for the materials furnished the contractor. Appellant, by its own delay, has failed to secure the benefit of the statute authorizing it to acquire the lien, and the court is without authority to enlarge its provisions.

Judgment affirmed.